## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL BOWENS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:22-00084-N** |
| | ) | |
| **ESCAMBIA COUNTY BOARD OF** | ) | |
| **EDUCATION, *et al.*,** | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

This civil action is before the Court on the following matters:[1]

1. the "Motion for Partial Summary Judgment" under Federal Rule of Civil

   Procedure 56 (Doc. 64), with separate supporting evidentiary material (Doc.

   65), filed May 4, 2023, by the Plaintiff, Michael Bowens; the response brief

   (Doc. 74) in opposition to said motion, with separate supporting evidentiary

   material (Doc. 73), filed by the remaining Defendant, the Escambia County

   Board of Education ("the Board"); and Bowens's brief in reply (Doc. 76) to said

   response, with separate supporting evidentiary material (Doc. 75);

2. the Board's "Motion for Summary Judgment" under Rule 56 (Doc. 69), with

   separate supporting brief (Doc. 71) and evidentiary material (Doc. 70), filed

   May 19, 2023; Bowens's response brief (Doc. 81) in opposition to said motion,

   with separate supporting evidentiary material (Docs. 82, 83, 84); and the

---

[1] With the parties' consent, this action has been referred to the undersigned Magistrate Judge to conduct all proceedings in this action, including trial; to order entry of final judgment; and to conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 21).

Board's brief in reply (Doc. 90) to said response; and

3. Bowens's "Motion for Leave to File an Amended Complaint Adding Claims Under Title VII" (Doc. 91) filed July 28, 2023; the Board's brief in response (Doc. 93) to said motion; and Bowens's brief in reply (Doc. 94) to said response.

Briefing on each of the above-mentioned motions is now closed, and the motions are ripe for disposition.

## I.    *Procedural Background*

Bowens initiated this civil action by filing a complaint with the Court on February 23, 2022. *See* (Doc. 1); Fed. R. Civ. P. 3. The complaint named as defendants the Board and John Knott, former superintendent of the Escambia County, Alabama public school system, and asserted claims and causes of action arising out of Bowens's employment as a teacher with the Escambia County public school system. Counts One and Two alleged claims against the Board under 42 U.S.C. § 1983 for, respectively, race discrimination and retaliation in violation of 42 U.S.C. § 1981.[2] Counts Three and Four alleged the same respective claims against Knott.

The Board served an answer to the complaint on May 3, 2022. (Doc. 6), while Bowens voluntarily dismissed his claims against Knott without prejudice effective

---

[2] Section "1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)). *Accord, e.g.*, *Holmes v. City of Ft. Pierce, Fla.*, No. 20-13170, 2022 WL 247976, at *4 (11th Cir. Jan. 27, 2022) ("When a plaintiff sues a state actor under section 1981 for damages for an alleged violation of his rights, he must proceed under section 1983…"). The undersigned uses § 1981 and § 1983 interchangeably herein in reference to Bowens's claims based on violations of § 1981.

June 16, 2022. (*See* Docs. 11, 12). After the remaining parties filed a report of their planning meeting under Federal Rule of Civil Procedure 26(f) (Doc. 16), the Court entered a scheduling order under Federal Rule of Civil Procedure 16(b) on August 31, 2022 (*see* Doc. 26), which was twice modified (*see* Docs. 29, 41). Under the last modification to the scheduling order (Doc. 41), discovery closed on April 28, 2023, and dispositive pretrial motions were due May 19, 2023. The present motions for summary judgment were all filed by the deadline. On July 28, 2023, Bowens moved for leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2). (Doc. 91).

## II.    *Motion for Leave to Amend Complaint*

Bowens moves for leave to amend his complaint to add claims against the Board for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Doc. 91). As grounds for seeking leave to amend his pleading after the October 7, 2022 deadline for him to do so set out in the Rule 16(b) scheduling order (*see* Doc. 26 § 6, PageID.87),[3] Bowens states that a right-to-sue letter for his charge of discrimination with the Equal Employment Opportunity Commission based on the underlying events in this case was only issued on July 24, 2023. (*See* Doc. 91-1, PageID.1024). Bowens represents that his Title VII claims are "identical" to the § 1981 claims already pending, and are based on the same allegations (*see* Doc. 91, PageID.1019-1020), and a review of Bowens's proposed

---

[3] Among other things, "[t]he scheduling order must limit the time to…amend the pleadings…" Fed. R. Civ. P. 16(b)(3)(A).

amended complaint (Doc. 91-3) confirms that. The Board has responded that it "does not object to or oppose the filing of plaintiff's proposed Amended Complaint." (Doc. 93, PageID.1037).

Given that a plaintiff must exhaust administrative remedies with the EEOC prior to filing suit under Title VII, *see, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001), and that Bowens moved to add his Title VII claims only a few days after receiving his right-to-sue letter, the Court finds good cause to permit the requested amendment after the deadline to do so set out in the Rule 16(b) scheduling order. *See* Fed. R. Civ. P. 16(b)(4); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418-19 (11th Cir. 1998) (per curiam). And there being no apparent reason to deny leave to amend under Rule 15(a)(2) in this instance, *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), the motion for leave to amend (Doc. 91) is due to be granted, such that Bowens's operative complaint is deemed amended to assert race discrimination and retaliation claims under both Title VII and § 1983, based on unchanged factual allegations from those in the initial complaint.

As Bowens's Title VII claims are based on the same facts as his § 1983 claims, and are subject to the same standards on summary judgment, *see* n.13, *infra*, the Court deems the present motions for summary judgment as addressing both Bowens's Title VII and § 1983 claims.

### III.  *Motions for Summary Judgment*

### a.  Summary Judgment Legal Standards

"A party may move for summary judgment, identifying each claim or defense-
-or the part of each claim or defense--on which summary judgment is sought. The
court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it might affect the outcome
of the suit under governing law and it is 'genuine' if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd.
v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotations omitted).
"Summary judgment is only appropriate if a case is 'so one-sided that one party must
prevail as a matter of law.' " *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235
(11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986))
(citation omitted). However, a " 'mere scintilla' of evidence is insufficient; the non-
moving party must produce substantial evidence in order to defeat a motion for
summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009)
(per curiam). In other words, "there must be enough of a showing that the jury could
reasonably find for that party … Where the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party, there is no genuine issue for
trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations
omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the

light most favorable to the party opposing the summary judgment motion." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration adopted) (quotations omitted)). *See also Allen*, 121 F.3d at 646 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quotations omitted)); *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 n.3 (11th Cir. 1996) ("In determining the facts for summary judgment purposes, we, like the district court, are required to view the evidence in the light most favorable to the plaintiff. When that is done, a pure issue of law is created."). "The Court 'must avoid weighing conflicting evidence or making credibility determinations.' " *Ave. CLO Fund*, 723 F.3d at 1294 (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000)). However, " 'an inference based on speculation and conjecture is not reasonable.' " *Id.* (quoting *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

"Where … the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present 'affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.' " *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). "For issues on which

the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.' " *Hammer*, 20 F.3d at 1141 (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Four Parcels of Real Prop.*, 941 F.2d at 1438 (citations and quotations omitted). *Accord, e.g.*, *Baker v. Upson Regional Medical Center*, No. 22-11381, 2024 WL 1003534, at *4 (11th Cir. Mar. 8, 2024) (per curiam).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (per curiam) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)[4]). "In practice,

---

[4] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization

cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist…" *Ga. State Conf. of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) (citation and quotations omitted). "[W]hen both parties proceed on the same legal theory and rely on the same material facts the court is signaled that the case is ripe for summary judgment. Where, … however, the parties disagree as to the facts and take inconsistent legal theories the mere filing of cross motions for summary judgment does not warrant the entry of such judgment." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmoving party may avail itself of all facts and justifiable inferences in the

---

Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

record taken as a whole." *Allen*, 121 F.3d at 646 (quotation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Id.* (quotation omitted). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (citing *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")). Importantly, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)).

### b. Facts on Summary Judgment[5]

The Board oversees the public school system of Escambia County, Alabama. Knott served as the school system's superintendent from July 1, 2014, to August 31,

---

[5] Because the Court must view the evidence in the light most favorable to the non-movant, "what [the Court] state[s] as 'facts' … for purposes of…ruling[] on … summary judgment motions may not be the actual facts." *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 992 (11th Cir. 1995). It is "[a]t trial[] where the actual facts will be established." *Id. Accord Cottrell*, 85 F.3d at 1486 ("[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes.").

2021. (Doc. 70-6 [Knott Affidavit] ¶ 2, PageID.509; Doc. 81 [Bowens's SJ Response], PageID.805).[6] Bowens, who is African-American, was hired by the school system as a probationary teacher in September 2015. (Doc. 70-6 ¶ 8, PageID.510; Doc. 81, PageID.805).[7] At all relevant times, Bowens possessed a provisional teaching certificate in Business and Marketing Education for grades 6 through 12. (Doc. 70-2 [List of Bowens's Certificates], PageID.356; Doc. 81, PageID.805).[8]

In the Escambia County school system, teachers' duties are not limited to just teaching in the classroom or directly supervising students. Teachers can be assigned to various duties, including serving as administrative designees, administering tests, or performing other tasks as assigned or required based upon the discretion of their supervisors and the needs of their schools, or the school system as a whole. (Doc. 70-6 ¶ 7, PageID.510; Doc. 81, PageID.806).

---

[6] For purposes of this "Facts" section, citations to Bowens's response brief (Doc. 81) indicate his admission to various statements of fact in the Board's motion for summary judgment.

[7] Public school teachers in Alabama are classified as non-tenured/probationary, and tenured/non-probationary. Non-tenured teachers are employed at-will and can be terminated with or without cause at any time during their probationary period. Teachers earn tenure after their third year of employment with a school system, and can thereafter be terminated only with cause and after a hearing. (Doc. 70-6 ¶ 6, PageID.510).

[8] "A superintendent or administrator who wishes to employ an individual may request a Provisional Certificate in a Teaching Field (PCTF)." Ala. Admin. Code 290-3-2-.06(1) (version effective April 24, 2016). "An individual must hold a valid certificate for all teaching fields to which he or she is assigned. An individual who holds only a valid PCTF must be assigned only to the teaching field for which the PCTF was issued." Id. at 290-3-2-.06(2)(b). See also id. at 290-3-2-.07(1), (2)(b) (setting out similar provisions for Provisional Certificates in a Career and Technical Teaching Field (PCCT)).

Deborah Bolden became principal of Escambia County Middle School ("ECMS") in 2016.[9] As principal, she was responsible for the school's day-to-day operations. Her duties included supervising personnel within the school, making recommendations to the superintendent about who should be hired to work there, and assigning teachers within the school. (Doc. 70-7 [Bolden Aff.] ¶ 2, PageID.528; Doc. 81, PageID.808). At the time Bolden became principal, Bowens was a business education and career technology teacher at ECMS. (Doc. 70-7 ¶ 5, PageID.529; Doc. 82-5 [Bowens Response Ex. 5], PageID.876).

In or around November 2016, Bolden began working to develop and implement a Collaboration STEM[10] Lab at ECMS, based on a similar one at her previous school. (Doc. 70-7 ¶ 4, PageID.529; Doc. 81, PageID.808-809; Doc. 82-1 [Grant Application], PageID.867). Per an Education Grant Application signed by Bolden, the goal of the Collaboration Lab was "to promote communication and collaboration skills through problem solving and hands on learning. The collaboration lab will be used for class group projects; however, the emphasis will be on robotics." (Doc. 82-1 [Bowens Response Ex. 1], PageID.867. *See also* Doc. 82-2 [Bowens Response Ex. 2], PageID.870). Bolden approached Bowens about starting a Robotics Program at ECMS (*see* Doc. 82-12 [Bowens Response Ex. 12], PageID.890), and authorized him to make purchases and receive training for that purpose. (Doc. 81-1 ¶ 12, PageID.847; Doc.

---

[9] Bolden left this position in 2020. (Doc. 70-7 ¶ 1, PageID.528).

[10] STEM stands for "Science, Technology, Engineering, and Math." (Doc. 82-1, PageID.867).

82-16 [Bowens Response Ex. 16]; PageID.898). Bowens also taught robotics classes at the school. (*See* Doc. 82-10, PageID.886).

Knott's duties as superintendent included making personnel recommendations to the Board. (Doc. 70-6 ¶ 3, PageID.509; Doc. 81, PageID.813). Knott would hold organizational meetings in April of each year because personnel decisions for the upcoming school year need to be made to allow for timely non-renewals and other personnel action. Staffing planning for the following school year were based upon the needs of the school and the funding expected for the year. (Doc. 70-6 ¶ 20, PageID.514; Doc. 81, PageID.813-814). The organizational meeting for the 2018-2019 school year took place on April 19, 2018. Anticipating the loss of a teaching unit at ECMS for the upcoming school year, Knott discussed with Bolden the possibility of eliminating one of ECMS's two Business Education classes. (Doc. 70-6 ¶ 21, PageID.514-515; Doc. 70-7 ¶ 10, PageID.531). Bowens was not tenured, while the other Business Education teacher at ECMS was. (*See* Doc. 70-6 ¶ 22, PageID.515). By letter dated May 21, 2018, Knott notified Bowens that the Board had "accepted [his] recommendation to terminate [Bowens's] employment effective at the end of the current school year." (Doc. 65-18, PageID.295).

Angela Davis, a special education teacher at ECMS, was put in charge of the Collaboration STEM Lab when it opened for the 2018-2019 school year, and given the title "Technology Education Teacher."

c.    *Analysis*

1. **Race Discrimination**

"Title VII of the Civil Rights Act of 1964 outlaws employment discrimination because of 'race, color, religion, sex, or national origin.' 42 U.S.C. § 2000e-2(a)(1). Likewise, 42 U.S.C. § 1981 prohibits employers from intentionally discriminating on the basis of race in employment contracts." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 943–44 (11th Cir. 2023).

> In order to survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in her favor.
>
> One way that she can do so is by satisfying the burden-shifting framework set out in *McDonnell Douglas*[ *Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)].[11] When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. 1817. If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate,

---

11 "A plaintiff can also present direct evidence of discriminatory intent, *see, e.g.*, *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 921–22 (11th Cir. 2018), or demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination, *see, e.g., Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (citation and quotation marks omitted)." *Lewis*, 918 F.3d at 1221 n.6. *Accord Tynes*, 88 F.4th 939, 944-47 (explaining how satisfying the *McDonnell Douglas* framework is not the only way a plaintiff claiming discrimination can survive summary judgment). However, Bowens relies solely on the *McDonnell Douglas* framework both in his own motion for summary judgment and in opposing the Board's.

nondiscriminatory reason for its actions.[12] *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Id.* at 256, 101 S. Ct. 1089.

*Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc)

(footnote omitted).[13]

The Board's motion for summary judgment challenges Bowens's ability to

satisfy the fourth prong of the *prima facie* test.[14] "To establish the fourth [*McDonnell*

*Douglas*] prong, the plaintiff must present evidence of a comparator—someone who

---

[12] "The defendant need not persuade the court that it was actually motivated by the proffered reason, but need only present evidence raising a genuine issue of fact as to whether it discriminated against the plaintiff. However, the defendant's response must frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (citation and quotation omitted).

[13] "[W]hen, as here, a plaintiff attempts to use Title VII and 42 U.S.C. § 1983 as parallel remedies for the same allegedly unlawful employment discrimination, the elements of the two causes of action are identical, and identical methods of proof, such as the *McDonnell Douglas* framework, are used for both causes of action…" *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (per curiam) (citation omitted). *See also Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a section 1983 claim of race or gender discrimination are the same as the elements of a Title VII disparate treatment action. The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context." (citation omitted)); *Lewis*, 918 F.3d at 122 n.5 ("the same analysis—and in particular, the *McDonnell Douglas* burden-shifting framework—applies to" Title VII and § 1981 discrimination claims).

[14] The Board also argues that Bowens was not qualified to teach in the Collaboration STEM Lab, but the undersigned declines to address that issue in light of the determination that Bowens's discrimination claims fail on other grounds, *see infra*.

is 'similarly situated in all material respects.' " *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (quoting *Lewis*, 918 F.3d at 1224). "[T]he plaintiff and her comparators need *not* be similar in all but the protected ways. A plaintiff needn't prove, therefore, that she and her comparators are identical save for their race or gender, as the case may be…Nor is it necessary for a plaintiff to prove purely formal similarities—e.g., that she and her comparators had precisely the same title. Nor will minor differences in job function disqualify a would-be comparator." *Lewis*, 918 F.3d at 1227 (citations and quotation omitted). "Although what constitutes a 'material' similarity or difference will differ from case to case, ordinarily a similarly situated comparator and the plaintiff will: have engaged in the same basic conduct or misconduct, be subject to the same employment policies, have the same supervisor(s), and share an employment or disciplinary history." *Jenkins*, 26 F.4th at 1249 (citing *Lewis*, 918 F.3d at 1227-28). "[A] valid comparison will turn not on formal labels, but rather on substantive likenesses…[A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis*, 918 F.3d at 1228 (quotation omitted). As the Eleventh Circuit has recognized, "[a]n all-material-respects standard…leaves employers the necessary breathing space to make appropriate business judgments[, and also] serves the interest of sound judicial administration by allowing for summary judgment…where the comparators are simply too dissimilar to permit a valid inference that invidious discrimination is afoot." *Id.* at 1228–29.

The Board's motion for summary judgment points to Davis as a potential comparator for Bowens's racial discrimination claims. Bowens does not point to any other comparator in response to the Board's motion, and Davis is the only comparator he puts forth in his own motion for partial summary judgment on his discrimination claims.[15] Bowens spends significant briefing space arguing that he was just as, or more, qualified than Davis to be retained at ECMS and be put in charge of the Collaboration STEM lab, largely because of his experience teaching robotics and computer classes at the school. The Board mostly does not contest Bowens's credentials and experience in that regard, but has argued that Bowens was not "similarly situated in all material respects" to Davis due to their differences in teaching certification. It is undisputed that, at all relevant times, Bowens only possessed a provisional certificate that, under Alabama law, limited him to teaching Business and Marketing Education to grades 6 through 12. *See* Ala. Admin. Code 290-3-2-.06(2)(b), (3). As ECMS enrolled students in grades 4 through 8, Bowens was ineligible to teach half of the grade levels there. Davis, on the other hand, was fully

---

[15] The Board has also argued in its motion for summary judgment that Ashley Knowles should not be considered a similarly-situated comparator to Bowens with regard to any claim for disparate pay. (*See* Doc. 71, PageID.714-715). However, Bowens makes no mention of Knowles in his pleadings or his motion for summary judgment, nor does he address the argument regarding Knowles as a discrimination comparator in his response to the Board's motion. Based on this silence, Bowens is deemed to not be relying on Knowles as a comparator for purposes of his discrimination claims, and the undersigned will not further address the Board's arguments on that point. *See Solutia, Inc.*, 672 F.3d at 1239 ("There is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments…" (quotation omitted)).

certified to teach Special Education at all grade levels, K-12. (Doc. 70-7 ¶ 13, PageID.533; Doc. 70-9, PageID.585; Doc. 81, PageID.812). The undersigned finds that this distinction is a material difference that precludes finding Bowens "similarly situated" to Davis.[16]

---

[16]    The Board relies on *Lewis*'s formulation of the *prima facie* test in its summary judgment briefing. In both his own motion for summary judgment and his response in opposition to the Board's, Bowens relies on the *prima facie* test articulated in *Taylor v. Runyon*, 175 F.3d 861 (11th Cir. 1999), which, in the context of a claim for "discrimination in a promotional decision," articulated the fourth prong as requiring a showing that "other equally or less qualified employees who are not members of the protected minority were promoted." 175 F.3d at 866 (citing *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988)). However, that version of the *prima facie* standard was later called into question as inconsistent with prior circuit precedent. *See Walker v. Mortham*, 158 F.3d 1177, 1187 & n.23 (11th Cir. 1998) (stating that *Wu* was not "binding precedent establishing a prima facie standard contrary to that of *Crawford* [*v. Western Elec. Co.*, 614 F.2d 1300 (5th Cir. 1980)]"). Regardless, to the extent the *prima facie* test from *Taylor* and *Wu* can be satisfied by a comparator who is less than "similarly situated in all material respects," the undersigned finds that those cases have been abrogated by the *en banc Lewis* decision. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("Under [the prior panel precedent] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court <u>or by this court sitting</u> <u>en banc</u>." (emphasis added)). Noting that prior Eleventh Circuit cases had "sown confusion" on the issue, *Lewis* made clear that it intended "to clean up, and to clarify once and for all the proper standard for comparator evidence in intentional-discrimination cases…" 918 F.3d at 1217-18. Moreover, to permit a comparator who is less than "similarly situated in all material respects" to satisfy a *prima facie* showing would necessarily relegate that consideration to the pretext stage of the *McDonnell Douglas* test. *Lewis* expressly rejected the argument that the comparator analysis "be reserved for the pretext stage[,]" holding "that a meaningful comparator analysis must remain part of the *prima facie* case." *Id.* at 1221-24.
      However, even if some formulations of the *McDonnell Douglas prima facie* test not expressly requiring "similarly situated" comparator evidence remain valid after *Lewis, see, e.g., Tolley v. Mercer Univ.*, No. 22-13283, 2023 WL 8253812, at *3 (11th Cir. Nov. 29, 2023) (per curiam) (unpublished) ("In a traditional failure-to-hire case, the plaintiff establishes a prima facie case by demonstrating that: (1) he was a member of a protected class; (2) he applied and was qualified for a position for which the employer was accepting applications; (3) despite his qualifications, he was not hired; and (4) the position remained open or was filled by another person outside of

In disputing the Board's assertion that "Bowens had a provisional certificate and could teach only Business Education or Career Tech[,]" Bowens claims that his "provisional teacher certificate… allowed him to teach any subject assigned him by principal Bolden…" (Doc. 81, PageID.820). In support of this statement, he cites only to Exhibit 44 to his summary judgment response, an "Employee Handbook Excerpt re: Assigned Duties." (*Id.*; Doc. 84, PageID.946; Doc. 84-9). That one-page excerpt states, in relevant part: "Employees are required to perform the duties and responsibilities that are assigned to them by the Board, the Superintendent, or their supervisor(s). Such duties and assignments may extend beyond or outside the

---

his protected class. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002)."); *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998) ("[D]istrict court in this case erred in imposing as part of the prima facie case a requirement that each plaintiff establish that the successful applicant for his or her coveted position was less than or equally qualified to hold the position… [A plaintiff] need only prove that she herself was qualified to perform the coveted job."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) ("The instant case…involves a reduction in the employer's work force. In such cases, an employer rarely seeks more applicants for the jobs terminated, a circumstance that makes it almost impossible for a plaintiff to establish the fourth prong of the *McDonnell-Douglas* test. Accordingly, this Circuit has held that a plaintiff in a job-reduction case can establish a prima facie case by demonstrating: (1) that he was in a protected group and was adversely affected by an employment decision; (2) that he was qualified to assume another position at the time of discharge or demotion; and (3) evidence by which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." (citation omitted)), material differences between comparators can still be considered at the pretext stage. *See Walker*, 158 F.3d at 1193 ("Although a plaintiff may be forced to address relative qualifications if the defendant presents them to rebut the plaintiff's presumption of discrimination, the plaintiff need not introduce evidence regarding relative qualifications before then…"). To the extent Bowens need not show that Davis was "similarly situated" to him "in all material respects" to establish a *prima facie* showing, then for the same reasons discussed herein, the certification difference between the two is still a legitimate, non-discriminatory reason for treating them differently, and Bowens has failed to rebut that reason as pretextual.

instructional day and include off-campus functions, events, activities." (Doc. 84-9, PageID.967). However, it is not reasonable to interpret this broad, generalized statement as empowering Escambia County school officials to disregard the Alabama Administrative Code's clear directive that "[a]n individual who holds only a valid PCTF must be assigned only to the teaching field for which the PCTF was issued." Ala. Admin. Code 290-3-2-.06(2)(b).

Bowens further attempts to diminish the significance of his provisional certificate by claiming that he actually taught outside of the field and grade levels dictated by the certificate, citing generalized statements from his own declaration that he "taught all students at ECMS, including special education students, across the math and reading content areas[,]" and that he was part of "a team whose purpose is to increase knowledge and test scores in reading and math and to provide struggling students, such as special education students in my classroom with educational interventions." (Doc. 81, PageID.820; Doc. 81 ¶¶ 7-10, PageID.845-846). However, Bowens fails to explain why teaching "Business Education or Career Tech" should not involve addressing "math and reading content areas" to some extent, nor why limiting him to that field would necessarily prevent him from teaching special education students at all. And even accepting as true Bowens's vague claims that, in practice, he sometimes taught outside the grade levels permitted by his provisional certificate, this does not diminish the fact that there are still distinct, legally significant differences between provisional and full teaching certificates, *compare* Ala. Admin. Code 290-3-2-.06 & .07 (covering provisional certificates) *with* Ala.

Admin. Code 290.3-2-.03 (covering "Professional Educator Certificates"), and it was reasonable for Bolden to prefer a teacher who was actually certified to teach at all grade levels over one that was not but sometimes did anyway. *See Lewis*, 918 F.3d at 1229 ("An all-material-respects standard…leaves employers the necessary breathing space to make appropriate business judgments."). Moreover, Bowens has not disputed Bolden's assertion that "[t]here was (and continues to be) a small pool of Special Education teachers." (Doc. 70-7 ¶ 11, PageID.531).[17]

---

[17]     As explained elsewhere in this order, Bowens has failed to show that the Collaboration STEM Lab teacher was a new position for which the Board was required to seek applicants, and the undersigned agrees with the Board's argument, raised in its response to Bowens's motion for partial summary judgment, that the failure to assign Bowens to the Collaboration STEM Lab was not, in itself, an "adverse employment action" supporting a Title VII or § 1981 discrimination claim. Moreover, Thus, the only "adverse employment action" at issue in this case is Bowens's termination after the 2017-2018 school year.

"The Supreme Court has defined an adverse employment action as follows: 'A tangible employment action constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits.' " *Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1031 (11th Cir. 2008) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)). "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). "[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239.

While Bowens views being put in charge of the Collaboration STEM Lab as a promotion, he has not pointed to any evidence indicating that it would have resulted in some "serious and material change in the terms, conditions, or privileges of employment." He does not claim that the change in position would have resulted in increased pay, more benefits, a higher rank, etc. *See Webb-Edwards*, 525 F.3d at

However, even if Bowens could establish a *prima facie* case of discrimination, the Board has articulated a legitimate, nondiscriminatory reason for terminating Bowens after the 2017-2018 school year, and Bowens has failed to show that reason was pretextual.[18] The Board's stated reason is that a " 'career tech unit was cut at

---

1032–33 ("The record in this case does not demonstrate that passing over Ms. Webb–Edwards resulted in a serious and material change in the terms, conditions, and privileges of employment. Her wages, benefits, or rank were not affected."). There is also no indication that Bowens's duties or responsibilities would have significantly changed; indeed, Bowens admits that, when she was in charge of the lab, "Davis taught robotics and technology to middle school students, the same duties previously performed by Mr. Bowens." (Doc. 64, PageID.256. *See also id.*, PageID.257 ("[D]uring his tenure with Defendant, Mr. Bowens performed all aspects of the new technology position that was given non-competitively to Angela Davis."). The mere fact that Bowens perceived the position as desirable is not sufficient. *See Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449-50 (11th Cir. 1998) (favorably discussing cases from other circuits holding that lateral transfers that do not involve a demotion in form or substance cannot rise to the level of a materially adverse employment action); *Barnhart v. Wal-Mart Stores, Inc.*, 206 F. App'x 890, 893 (11th Cir. 2006) (per curiam) (unpublished) ("Whether an employment action is adverse is determined based on an objective standard. *Dekalb County*, 145 F.3d at 1448–49. A lateral transfer that does not result in 'lesser pay, responsibilities, or prestige' is not adverse. *Id.* Likewise, the refusal to give an employee such a transfer cannot be an adverse employment action."); *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (per curiam) ("The undisputed evidence established that the position at Valley Ranch had the same job title, benefits, duties, and responsibilities as the position that Stancu held at Indian Creek. Furthermore, the uncontroverted evidence also showed that Gables paid a lower wage to the person who did (initially) secure the maintenance supervisor position at Valley Ranch than Gables paid to Stancu. Stancu wanted the transfer because of his underlying desire for a shorter commute to work; this, of course, cannot have any effect on whether we view the transfer as a purely lateral one…Refusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision. Such a refusal is not akin to acts 'such as hiring, granting leave, discharging, promoting, and compensating.' ").

[18] The Board did not raise the issue of pretext at all in its motion for summary judgment. However, Bowens raised pretext in both his own motion for summary judgment and in response to the Board's motion, and the Board addressed pretext in both its response to Bowens's motion and its reply in support of its own motion. Thus, the undersigned finds that the issue of pretext has been sufficiently raised to allow

Escambia County Middle School[, and a] decision was made to eliminate one of the two business education classes at ECMS.' " (Doc. 74, PageID.768 (quoting Doc. 65-9, PageID.277)). To rebut this justification, Bowens points to evidence from the Alabama State Department of Education, provided by its Director of Local Education Authority, Ethan Taylor, purporting to show that ECMS actually did not lose any teacher units for the 2018-2019 academic year. The Board challenges this evidence with its own declaration from Taylor, purporting to clarify that ECMS did in fact lose some teacher units for the 2018-2019 academic year.[19]

---

both sides to meaningfully address it.

[19] Bowens attempts to bolster his claim of pretext by arguing that the proper procedures were not followed to put Davis into the newly created position with the Collaboration STEM Lab. He argues:

> According to written policies of the Defendant, all hiring decisions are made by the Defendant's Board of Education upon the recommendation of the superintendent (Exhibit S -Julie Madden Depo., 21:20 – 21:23). This mandate includes even transfers of teachers and other staff members. Within the Defendant school system personnel decisions require a recommendation from the superintendent and action on the part of the Board. (Id.). In this case, a new job was created ostensibly without the Board's knowledge, and certainly without the Board's consent or approval. The Board minutes compiled during the relevant time period show no recommendation to the Board for the creation of a new teaching position, no recommendation that a "Technology Education Teacher" job title be created, no recommendation that Angela Davis be hired into the "Technology Education Teacher" position, no recommendation that Davis be transferred out of her Special Education position, and no Board action on either personnel matter on the Board's own accord. []Further, there is no evidence of the newly created position being advertised or posted as an available vacancy within the school system, no Board minutes of a decision to fill the new position by the arbitrary hand selection of an inexperience teacher, particularly when a more senior teacher with actual robotics experience was being terminated for no performance related issues, but allegedly due to lack

_____

of available funding.

(Doc. 64, PageID.263). However, the single page of deposition testimony Bowens cites does not support his broad assertions about what Board policy requires when filling positions within the school system. That testimony, given by Julie Madden—an individual mentioned only once, in passing, in Bowens's complaint, and whose significance to this case Bowens does not bother to explain in his briefing—states, in relevant part as follows:

Q:     Well, from your experience within the system, if a teacher was taken from some other location within the school and placed over the lab, is that something that would come based on the recommendation from the superintendent to the board?

…

Madden:     What I always thought happened was the principal would make a recommendation to the superintendent and then the superintendent would make a recommendation to the board.

(Doc. 65-19, PageID.297). This lone statement about what Madden "thought" to be standard practice—unaccompanied by citation to any actual written rules or policies—cannot reasonably be read as reflecting what the Board's written policies always require, much less establish that any such rules or policies were violated in putting Davis in charge of the Collaboration STEM Lab without posting the position availability or seeking Board approval.

   Former Escambia County school system superintendent Knott has averred that putting Davis in charge of the lab was a reassignment, and that "[r]eassignments within a school do not require Board approval and are within the discretion of school principals, with approval by the superintendent." (Doc. 70-6 ¶ 30, PageID.518. *See also* Doc. 73-1 ¶ 3, PageID.733). Admittedly, Knott has also averred: "[B]ased upon the fact that the lab was newly-created, it may have been proper to post (advertise) the teaching position before assigning anyone to the lab." (Doc. 73-1 ¶ 4, PageID.734). As with Madden's testimony, though, this brief statement about what Knott believed "may have been proper" is not substantial evidence showing that any Board rule or policy was violated, much less that "established rules were bent or broken to give a non-minority applicant an edge in the hiring process[,]" as Bowens suggests. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998). The fact that the Board chose to advertise a job posting for the position after Davis resigned (*see* Doc. 75-6) does not alter this determination, nor do minutes from Board meetings that Bowens has cited—one, from a July 26, 2018 meeting, shows Board approval of

Regardless of what Taylor's data may show, Bowens has failed to show that Knott's *anticipation* of losing a teaching unit at ECMS for the 2018-2019 school year was a pretext for intentional discrimination *at the time Knott decided to recommend terminating Bowens in April 2018.* As pointed out by the Board (*see* Doc. 74, PageID.768-769), Knott states in an affidavit that, at the April 2018 organizational meetings "to plan for the 2018-2019 school year[, b]ased upon declining enrollment, [he] anticipated losing a foundation unit[20] at ECMS and knew cuts would need to be made." (Doc. 70-6 ¶ 21, PageID.514-515).[21] Knott's affidavit continues:

> At some point prior to the meeting for ECMS, I discussed with Career Tech David Lanier and Deborah Bolden the possibility of eliminating one of the two Business Education classes at ECMS. To me, it made sense to cut a Business Education Class for several reasons[.] First, it was an elective. When considering cuts, I thought it was best to cut an elective rather than a core academic class (Math, English, Science or Social Studies). Second, the other middle school in the system (W.S. Neal Middle School) had only one Business Education Class. As a superintendent, it is important that we strive for our schools to provide similar or comparable course offerings and treat no school better than a comparable school within the school district…One of the Business Education classes at ECMS was taught by Michael Bowens. The other

---

recommendations for teacher transfers to <u>different</u> schools (as opposed to moving positions within the same school) (Doc. 82-21, PageID.909), while the other is incomplete and not clear what is being approved (*see* Doc. 82-23, PageID.963).

[20] "Foundation" teaching units are based on funds provided by the State of Alabama. Bowens's position at ECMS was a foundation unit. (*See* Doc. 65-2, PageID.269). Bowens admits that Davis's position as a special education teacher was funded by federal, not state funds. (*See* Doc. 64, PageID.254; Doc. 65-7, PageID.275).

[21] Knott avers that organizational meetings were usually "held in April because personnel decisions for the upcoming school year need to be made so that non-renewals and similar personnel moves could be made within the time provided by the law." (Doc. 70-6 ¶ 20, PageID.514).

was taught by John Stephens. Mr. Bowens was not tenured. Mr. Stephens was tenured and could not be terminated without a hearing.

…

In April 2018 when the organizational meeting was held, I expected that ECMS would lose at least .5 state-allocated teacher units. We were already providing roughly 4-1/2 additional teacher units with our local funds for ECMS, which far exceeded the number of additional locally-funded teacher units at our comparable middle school, W.S. Neal Middle School. Due to the expected loss of state funded teacher units and system-wide budget needs, I made a decision to reduce one teacher unit. The Business Education class was eliminated and has not been re-established…

At the time we held our organizational meeting in April, 2018, we had documentation that Mr. Taylor had provided to us in July, 2017 showing that ECMS would have 29.14 teacher units for the 2017-2018 school year. This was the year that AC Moore Elementary School 4th grade students transitioned to ECMS after the Board voted in June 2017 to close the school. When I say we lost a teacher unit, I mean we went down from 29.14 units.

(*Id.* ¶¶ 21-22, 26, 28 PageID.515-517). Knott also notes that "the final numbers for the 2018-2019 school year" by Taylor in the declaration Bowens relies on "were established in September, 2018[] after staffing decisions were made in April, 2018." (*Id.* ¶ 27, PageID.516-517).

"To show pretext, [a plaintiff] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence. A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute her business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable

employer, an employee must meet that reason head on and rebut it, and she cannot succeed by simply quarreling with the wisdom of that reason." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265–66 (11th Cir. 2010) (citation and quotations omitted). "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Id.* at 1266. "Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. [Courts] do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Id. See also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis*, 918 F.3d 1213 ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules…Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997) ("The true reason for the action of which the plaintiff is complaining might be something embarrassing to the employer, such as nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, the plaintiff's being a whistleblower, the employer's antipathy to

irrelevant but not statutorily protected personal characteristics, a superior officer's desire to shift blame to a hapless subordinate[,] or even an invidious factor but not one outlawed by the statute under which the plaintiff is suing; or the true reason might be unknown to the employer; or there might be no reason." (cited favorably by *Alvarez*, 610 F.3d at 1266-67)).

Thus, even if Bowens is correct that ECMS did not actually lose a teacher unit for the 2018-2019 school year, he has failed to "meet head on and rebut" Knott's stated belief that such a loss was anticipated in April 2018 at the time personnel decisions were being made for the 2018-2019 school year, resulting in the decision to terminate Bowens.[22] Moreover, the simple fact that Bowens, an African-American, was terminated, while Davis, a white person that Bowens perceived as less qualified, was retained and given a position Bowens desired, is not enough to meet his "ultimate burden" on summary judgment, which is "to show not just that [the Board]'s proffered reasons for firing h[im] were ill-founded but that unlawful discrimination was the true reason." *Alvarez*, 610 F.3d at 1267. *See also Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1019 (11th Cir. 2023) ("The fact that Ossmann was replaced by a non-white employee is not enough. Being replaced by someone outside one's protected class can help to establish the prima facie case of discrimination for burden-shifting purposes.

---

[22] Bowens argues that the new position of "Technology Education Teacher," the title assumed by Davis when she was put in charge of the Collaboration STEM Lab, was paid for by foundation funds, which discredits any claim about losing foundation units in the 2019-2020 school year. However, the exhibit Bowens cites in support of this assertion (*see* Doc. 64, PageID.256 (citing "Exh. K")) shows that the position was "Foundation" funded as of "09/03/2020," which fails to rebut Knott's stated concerns in April 2018 about losing a foundation unit for the 2018-2019 school year.

But it is not enough to carry the day on the substantive question of discrimination." (citation omitted)); *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (per curiam) ("In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex.").

For these reasons, summary judgment is due to be granted to the Board on Bowens's race discrimination claims.

## 2. Retaliation

"Retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257–58 (11th Cir. 2012). "A Title VII retaliation claim based on circumstantial evidence, like the claim asserted by [Bowens] here, is ordinarily analyzed under the *McDonnell Douglas* burden-shifting framework." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) "A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Chapter 7 Tr.*, 683 F.3d at 1258 (quotations omitted). In moving for summary judgment on Bowens's retaliation claims, the Board addresses only the third prong of the *prima facie* showing, and only on the grounds that the temporal proximity between Bowens's protected activity—as the Board submits, complaining about his

son's treatment at school that Bowens and his wife considered racially discriminatory—and when "Superintendent Knott eliminated the Career Tech unit at ECMS and subsequently recommended to the Board that Mr. Bowens be terminated" in April 2018. (Doc. 71, PageID.704, 716).

As the Board correctly notes, "[c]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.' " *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). "But mere temporal proximity, without more, must be 'very close.' " *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (internal citations omitted)). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.* (citing *Clark County Sch. Dist.*, 532 U.S. at 273). However, "a period as much as one month between the protected expression and the adverse action is not too protracted." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). *Accord Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1273 (11th Cir. 2017) (one-month period sufficient to meet "temporal proximity…burden of raising a genuine dispute as to whether his taking of FMLA

leave and his termination were casually related").

As Bowens admits: "On February 5, 2018, Mr. Bowens and his wife (a fellow former employee of Defendant) complained about racial harassment suffered by their son in one of Defendant's schools and about racially disparate treatment in the timing of their pay increases for earning master's degrees as compared to that of White employees…[T]wo months later, on April 19, 2018, at the organizational planning meeting for ECMS, Superintendent Knott decided to terminate Mr. Bowens' employment." (Doc. 81 PageID.834). Bowens cites no authority indicating that a two-and-a-half-month period between the protected activity and the adverse action is, by itself, sufficient to show causation.[23]

However, that temporal period does not stand by itself on this record. Knott states in his affidavit that the school district's organizational meetings were always "held in April because personnel decisions for the upcoming school year need to me made so that non-renewals and similar personnel moves could be made within the time provided by the law." (Doc. 70-6 ¶ 20, PageID.514). Thus, as Bowens points out, "the April 2018 organizational planning meeting represented the first opportunity" Knott had to recommend not renewing Bowens for the 2018-2019 school year. Considered along with these additional circumstances, the two-and-a-half-month

---

[23] Bowens conclusorily cites to a decision of the district court in *El-Saba v. University of South Alabama*, Civil Action No. 15-0087-KD-N (S.D. Ala. Nov. 3, 2016), *aff'd*, 738 F. App'x 640 (11th Cir. 2018). However, as the Board correctly points out, in that case there was "approximately a year and a half" between the last documented protected activity and the adverse employment action, which was held "simply too remote to bear any temporal relationship to El-Saba's termination." 738 F. App'x at 647.

delay between Bowens's last complaint and Knott's recommendation is sufficient to show a *prima facie* causal connection between the two.

Nevertheless, summary judgment is still due to be granted to the Board on Bowens's retaliation claims. Once a plaintiff establishes a *prima facie* case of retaliation, "the burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action. Assuming the employer's burden is met, the burden shifts back to the plaintiff to establish that the reason offered by the employer was not the real basis for the decision, but a pretext for retaliation." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (citation and quotation omitted). The Board's "legitimate, nonretaliatory reason" for terminating Bowens is the same one articulated for Bowens's discrimination claims, and for the reasons already discussed, *see supra*, Bowens has failed to rebut that reason as pretextual.

For this reason, summary judgment is due to be granted to the Board on Bowens's retaliation claims.

### 3.  "Municipal Liability" under § 1983

The Board has also argued that Bowens cannot establish "municipal liability" for purposes of his § 1983 claims. The undersigned agrees.

> [M]unicipalities may not be held liable for constitutional deprivations on the theory of *respondeat superior. Denno v. Sch. Bd. of Volusia County, Fla.,* 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, "municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986). Therefore, a municipality may be held liable "only if such constitutional torts result from an official

government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno,* 218 F.3d at 1276. In addition to identifying conduct attributable to the municipality, a plaintiff alleging municipal liability under § 1983 must show that the "the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with deliberate indifference to its known or obvious consequences." *Davis*[ *v. DeKalb County Sch. Dist.*], 233 F.3d [1367,] 1375–76 [(11th Cir. 2000)] (internal quotation and citation omitted).

…

Municipal liability from a single action or decision may only "be deemed representative of the municipality" if "the acting official [is] imbued with *final* policymaking authority." *Denno,* 218 F.3d at 1276 (emphasis added). Determining the persons or bodies that have final policymaking authority for the defendant is a matter of state law to be determined by the trial judge and not the jury. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 738, 109 S. Ct. 2702, 2724, 105 L. Ed. 2d 598 (1989); *Owens v. Fulton County,* 877 F.2d 947, 950–51 (11th Cir. 1989)…

[The Eleventh Circuit has] strictly interpreted "*Monell*'s policy or custom requirement to preclude § 1983 liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). In other words, final policymaking authority over a particular subject matter does not vest in an official whose decisions are "subject to meaningful administrative review." *Id.* at 1401. *Compare Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir. 1996) (accepting concession that city police chief was not final policymaker with respect to employment decisions where police chief's decisions could be reversed by the city manager) *with Martinez v. City of Opa–Locka, Fla.*, 971 F.2d 708, 714–15 (11th Cir. 1992) (finding final policymaking authority where "the City Manager's decision to hire or fire administrative personnel is completely insulated from review")…

*Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263-64 (11th Cir. 2010).

Here, it is undisputed that neither Knott nor Bolden had final authority to terminate Escambia County school system teachers. Rather, Knott could only make recommendations to the Board, which held such final authority and could question or reject Knott's recommendations. *See* (Doc. 70-6 ¶¶ 3-4, PageID.509); Ala. Code § 16-8-23 ("The county board of education shall appoint, upon the written recommendation of the county superintendent, all principals, teachers, clerical and professional assistants authorized by the board. The county board may suspend or dismiss for immorality, misconduct in office, insubordination, incompetency or willful neglect of duty, or whenever, in the opinion of the board, the best interests of the school require it, superintendents, principals, teachers or any other employees or appointees of the board, subject to the provisions of Chapter 24 of this title."); *Ex parte Whitlow*, -- So. 3d --, No. CL-2023-0050, 2023 WL 6527527, at *4 (Ala. Civ. App. Oct. 6, 2023) ("The Superintendent…can only make recommendations regarding the hiring, the nonrenewal, the termination, and the reinstatement of employees; he does not have the power to hire, to not renew, to terminate, or to reinstate a contract principal. See § 16-8-23 and Board of Sch. Comm'rs of Mobile Cnty. v. Weaver, 99 So. 3d 1210, 1221 (Ala. 2012)."). Accordingly, the Board cannot be held liable under § 1983 for Knott or Bolden's alleged discriminatory and retaliatory actions, and summary judgment is due to be granted to the Board on Bowens's § 1983 claims on this basis as well.

## IV.   Conclusion

In accordance with the foregoing, the following is **ORDERED**:

1. Bowens's "Motion for Leave to File an Amended Complaint Adding Claims Under Title VII" (Doc. 91) is **GRANTED**, such that Bowens's initial complaint is deemed amended to assert race discrimination and retaliation claims against the Board under both Title VII and § 1983, based on unchanged factual allegations;

2. Bowens's motion for partial summary judgment (Doc. 64) is **DENIED**;

3. The Board's motion for summary judgment (Doc. 69) is **GRANTED**; and

4. All of Bowens's claims asserted under Title VII and § 1983 in this action are **DISMISSED with prejudice**.

Judgment in accordance with this order shall hereafter be set out by separate document, in compliance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **28th** day of **March 2024**.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**